Alien, J.
 

 It is contended by the plaintiff in error:
 

 (1) That the court erred in holding that the tax commission of Ohio, under Section 5624-10, General Code, had the right to remit interest on delinquent taxes.
 

 (2) That the court erred in holding that Section 5704, General Code, with reference to publication by the auditor, is mandatory.
 

 (3) That the court erred in holding as immaterial the evidence offered by the plaintiffs in error tending
 
 *154
 
 to show impossibility of compliance with Section 5704 by the auditor.
 

 Did the tax commission have authority to remit the interest in question?
 

 Section 5712, General Code, was repealed in 1931 (114 Ohio Laws, 825, 842), effective October 14, 1931. In the form which controls in this record it contained the clause authorizing the charge of interest against the delinquent lands, and read as follows: ‘ ‘ The county treasurer, or his deputy, and the county auditor, or his deputy, shall attend at the court house in the county, on the second Tuesday in February, in conformity with the notice prescribed in the first section of this chapter, and at and after the hour of ten in the forenoon, the county auditor or his deputy shall proceed to make, in triplicate, a certificate to be known as a Delinquent Land Tax Certificate, for each tract of land, city or town lot or part of lot contained in such advertisement, on which the taxes, assessments and penalty have not been paid, describing each tract of land, city or town lot the same as it is described on the tax duplicate, and the valuation thereof as shown upon said tax duplicate, and the amount of taxes, assessments and penalty thereon due and unpaid, and stating therein that the same has been certified to the auditor of state as delinquent. Said county auditor or his deputy, shall continue from day to day with the making of said certificate until one complete certificate is made for each and all of said tracts of land, city or town lots or parts of lots contained in such advertisement, and upon which said taxes and assessments have not been paid. # * # Interest at the rate of eight per cent, per annum shall be charged on the duplicate against the delinquent lands, city or town lots or parts of lots certified by the county auditor on such certificate.”
 

 The remission was prayed for under Section 5624-10, General Code, which reads as follows: “The tax com
 
 *155
 
 mission of Ohio may remit taxes and penalties thereon, found by it to have been illegally assessed, and such penalties as have accrued or may accrue, in consequence of the negligence or error of an officer required to perform a duty relating to the assessment of property for taxation, or the levy or collection of taxes. It may correct an error in an assessment of property for taxation or in the tax list or duplicate of taxes in a county, but its power under this section shall not extend to taxes levied under the provisions of subdivision 2 of chapter 15 of title 2, part second of the General Code.” The exception in the last sentence is not material here.
 

 Section 5704, General Code, was amended in 114 Ohio Laws, 831, effective October 14, 1931. In the form which controls in this controversy, it provided for the publication of the delinquent list, which was omitted, and in its pertinent part it read as follows: “Each county auditor shall cause a list of delinquent lands in his county to be published once a week for two consecutive weeks, between the twentieth day of December and the second Thursday in February, next ensuing, in one daily newspaper in the English language of the political party casting the largest vote in the state at the last general election, and in one daily English newspaper of the political party casting the next largest vote in the state at the same election, both published in the county and of general circulation therein. * * * There shall be attached to the list a notice that the delinquent lands will be certified to the auditor of state as delinquent, as provided by law. ’ ’
 

 We hold that the tax commission was not authorized to remit the interest in question, first, because the statute does not authorize the tax commission to remit interest; and, second, because the record does not show that the interest was illegally assessed.
 

 Section 5624-10, General Code, authorizes the remission of “taxes” and “penalties,”
 

 
 *156
 
 It is the theory of the defendant in error that the tax commission of Ohio had jurisdiction to remit the interest, upon the ground that such interest constituted a penalty within the meaning of Section 5624-10. The argument of the defendant in error is that a tax does not constitute a debt.
 
 Peter
 
 v.
 
 Parkinson, Treas.,
 
 83 Ohio St., 36, 93
 
 N.
 
 E., 197, Ann. Cas., 1912A, 751;
 
 Tax Commission
 
 v.
 
 National Malleable Castings Co.,
 
 111 Ohio St., 117, 144 N. E., 604, 35 A. L. R., 1448. It cites a definition from "Webster which in substance defines interest as the price paid by a borrower for what he borrows, and urges that since a tax does not constitute a debt, interest cannot run upon taxes due, since there is no relation of debtor and creditor between the state and the taxpayer.
 

 Certain decisions from courts of last resort of other states do hold that under the statutes of those states interest on delinquent taxes is equivalent to a penalty. These decisions, however, are distinguishable upon the facts, either in the exorbitant amount of interest charged or in the fact that the statutes are by no means identical with our own. In the instant case the defendant in error is claiming that the term “penalties” in one statute is synonymous with the term “interest” in a totally different and later enacted statute. We proceed, therefore, to consider whether the word “interest” in Section 5712, General Code, was employed by the Legislature as synonymous with or equivalent to the word “penalties” employed in Section 5624-10, General Code. The very use of two such nonsynonymous words as “penalties” and “interest” indicates that the Legislature did not employ them in a synony-' mous meaning. Furthermore, the conclusion that the Legislature used the word “interest” in its ordinary and specific sense of a charge imposed for the use of money is indicated by the fact that the amount of interest imposed upon delinquent taxes is the exact max
 
 *157
 
 imum legal rate of interest in Ohio, namely, eight per cent.
 

 Also we observe that Section 5712, General Code, which provided for the charging of interest against delinquent lands, was not a part of the statute which contains Section 5624-10, providing for the remission of taxes and penalties. Section 5712 was a part of the chapter on Delinquent Lands, and its first enactment with the last sentence containing the interest clause which is the subject of this controversy is found in 107 Ohio Laws, 736. The section was derived from Section 2870, Revised Statutes, Bates’ 1906, and from analogous sections, but it contained no clause authorizing the charging of interest against delinquent lands until the enactment of 1917.
 

 Section 5678, General Code, on the other hand, which authorizes a penalty upon nonpayment of a real estate tax, while found in its latest form in 114 Ohio Laws, 828, derives from Section 2844, Revised Statutes, 1906, and from earlier analogous sections to be found in Swan
 
 &
 
 Critchfield, Section 5, page 1476, Swan & Sayler, Section 1, page 779, 58 Ohio Laws, 9, and 56 Ohio Laws, 101.
 

 Since a penalty for nonpayment of taxes on real estate had been imposed from 1859 on, there is no doubt that in 1910 (Section 5524, General Code, 101 Ohio Laws, 420, Section 80), when the tax commission was first authorized to remit “taxes” and “penalties,” and in 1911 (Section 5617-4, General Code, 102 Ohio Laws, 257, Section 149), the word “penalties” was used in the precise sense in which it was used in the statutes cited, the forerunners of Section 5678. However, the interest clause did not exist in the statutes at that time. It is therefore beyond question that the phrase “taxes and penalties” could not have been used by the Legislature in 1910 as synonymous with or including interest.
 

 Some point is made by defendant in error of the
 
 *158
 
 fact that Section 5624-11, General Code, speaks of “taxes, assessments or penalties.” Section 5624-11 is part of the same statute as Section 5624-10, and hence is to be construed
 
 in pari materia
 
 with Section 5624-10. The assessments referred to are evidently those mentioned in Section 5624-10, where arrears in assessment of property for taxation are mentioned. This term “assessments” cannot refer to “interest,” as used in Section 5712, for like the terms taxes and penalties, it also was enacted prior to the interest clause of Section 5712.
 

 Since the interest provision was enacted in Section 5712 in 1917, the Legislature has not seen fit to amend Section 5624-10 to add the term “interest,” and hence we conclude that the tax commission is not authorized to remit interest by virtue of its authority to remit taxes and penalties.
 

 Moreover, we do not lack for authority which holds that interest may be charged upon delinquent taxes as compensation for the use of money due the state. Thus Klein on Federal Income Taxation, pt. VI, page 1669, states that “Interest merely furnishes compensation to the Government for the loss of the use of the money subsequent to the time it lawfully became due. ’ ’
 

 In
 
 Sparks, Receiver,
 
 v.
 
 Lowndes County, 98
 
 Ga., 284, 25 S. E., 426, it was held in the syllabus: “In view of the act of November 11, 1889 (Acts 1889, page 31), prescribing that all executions for taxes due the state or any county thereof shall bear interest at the rate of seven per cent, per annum from the time fixed by law for issuing the same, tax executions against railroad companies bear that rate of interest, and the law is applicable even as to taxes accruing and becoming due while the property of such companies is in the hands of a receiver. Such interest is not in the nature of a penalty.”
 

 Chief Justice Simmons, speaking for the court, in discussion of the question stated: “We do not think
 
 *159
 
 the interest provided for by the act of 1889,
 
 supra,
 
 is to be regarded as a penalty. A penalty is a punishment, and interest is merely a compensation for the use or forbearance of money.”
 

 Chief Justice Simmons in this case points out that the per cent, described as interest is the legal rate of interest, as is the eight per cent, imposed in the Ohio statute.
 

 In the case of
 
 United States
 
 v.
 
 Childs, Trustee,
 
 266 U. S., 304, 45 S. Ct., 110, 69 L. Ed., 299, the Supreme Court of the United States held the interest upon taxes claimed against a trustee in bankruptcy to be “not penal but compensatory,” and Mr. Justice McKenna, in discussing the question, said:
 

 “At the outset we are confronted with the difference between penalty and interest. A penalty is a means of punishment; interest a means of compensation. Bouvier defines it to be ‘a consideration paid for the use of money or for forbearance in demanding it when due. ’ * * *
 

 “The tax in this case is one on income; a burden imposed for the support of the Government. Interest is put upon it and so denominated, distinguished from the 5% as penalty, clearly intended to compensate the delay in payment of the tax — the detriment of its nonpayment, to be continued during the time of its nonpayment — compensation, not punishment.”
 

 Therefore, under Section 5624-10, General Code, the tax commission had no jurisdiction to remit the interest in question; for remission of interest is not authorized by the statute. Also the remission of interest was prayed for upon the ground that it was illegally assessed (Section 5624-10, General Code). The tax commission is in no case authorized to remit a tax or penalty under that part of the statute claimed to control in this controversy, unless the assessment has been illegal. But the sole claim upon which, the defendant in error predicates its contention that the as
 
 *160
 
 sessment was illegal is that publication under Section 5704 was omitted. However, under the present statute on delinquent lands, Sections 5704 to 5727, both inclusive, the assessment of interest is in no way dependent upon the publication of the list of delinquent lands provided for in Section 5704. The liability to pay interest arises from the delinquency in the payment of the taxes. It is nowhere denied that the taxes herein involved have been for many years unpaid, and in fact the president of the housing company conceded that, when the lands in question were deeded to the Lakewood Housing Company in 1929, he knew that there were delinquent taxes upon the properties. In fact the county auditor had certified these parcels as delinquent in 1927. The interest becomes due and is to be charged on the duplicate against the delinquent lands, city or town lots or parts of lots, certified by the county auditor on the certificate provided for in the statute. Section 5712, General Code. This certificate is the delinquent land tax certificate, and is not the publication of notice provided for in Section 5704, General Code. These certificates have been duly made.
 

 Section 5713, General Code, provides that the date of interest shall run from the date of delinquency to the date of redemption, and thus strongly indicates that the liability for interest is not dependent upon the publication of the list. Moreover, the delinquency upon which the state auditor forecloses is not that certified under Section 5712, but that certified under Section 5718, after the delinquency has run for four years. Every condition necessary to the legal assessment of the interest had been fulfilled when the assessment was made, hence the tax commission exceeded its authority in remitting a charge which had been legally assessed.
 

 The county auditor also urges that the provisions of Section 5704 as to publication are not mandatory. Hence we proceed to consider whether the provision
 
 *161
 
 for publication, Section 5704, is mandatory or directory.
 

 Whether a statutory requirement is mandatory or directory depends on its effect. If) no substantial rights depend on it and no injury can result from ignoring it, and the- purpose of the Legislature can be accomplished in a manner other than that prescribed and substantially the same results obtained, then the statute will generally be regarded as directory; but, if not, it will be mandatory. This is the rule usually followed in this state in deciding whether statutory provisions constitute conditions precedent whose omission invalidates further action under the statute in question.
 

 It was held in
 
 Board of County Commissioners of Hamilton County
 
 v.
 
 Arnold,
 
 65 Ohio St., 479, 63 N. E., 81, that: “County commissioners have no jurisdiction to authorize a county treasurer to employ a collector to collect personal delinquent taxes under Section 2858, Revised Statutes, until they first cause the delinquent list to be publicly read as provided in that section.”
 

 As pointed out by the court in that case, without hearing the delinquent tax list read, the county commissioners would have no information upon which to judge and determine whether they deem it necessary to authorize the treasurer to employ collectors, whether the whole list or only a part of it should be collected by collectors, and the remainder by the treasurer, nor what compensation should reasonably be paid. The judgment of the court then was grounded upon the proposition that until the delinquent list had been read, the commissioners could take no step toward authorizing the appointment of a collector.
 

 In
 
 State, ex rel. Alcorn,
 
 v.
 
 Mittendorf et al., Commissioners,
 
 102 Ohio St., 229, 131 N. E., 158, it was held that under Section 5696, General Code, the duty publicly to read the list of persons delinquent in the payment of taxes on personal property is mandatory, but
 
 *162
 
 the requirement that the reading of the list occur at each September session of the board of county commissioners was directory merely. The decision that the duty publicly to read the list is mandatory was grounded upon the decision in the
 
 Arnold case, supra,
 
 and was not otherwise discussed, and hence it is plain that the court adopted the reasoning of the prior case.
 

 In
 
 Stanton, Pros. Atty.,
 
 v.
 
 Frankel Brothers Realty Co.,
 
 117 Ohio St., 345, 158 N. E., 868, it was held that the word “may” in Section 5610, General Code, would be regarded as imperative because the statute confers authority to perform an act which the public interest demands.
 

 In
 
 Board of Education of Ashville Village School District
 
 v.
 
 Briggs, Auditor,
 
 114 Ohio St., 415, 151 N. E., 327, it was held that the provisions of Section 5649-9c, General Code, are mandatory because they are for the benefit and protection of the taxpayer.
 

 "With these decisions for guidance, we ask ourselves whether Section 5704, General Code, is intended for the security of the citizen, the benefit or protection of the taxpayer, or to enable one to know with reasonable certainty for what real and personal property he is taxed. This involves some consideration of the history of the enactment. Prior to 1917, Section 5704 was a part of the old tax sale law, as were also Sections 5705 and 5711, which provided for publication of the list of delinquent lands. These sections required that a notice be attached to such list, that the delinquent lands “will be sold by the county treasurer as provided by law,” and specified the form of notice.
 

 Under the statute as it then existed this was the only notice that the taxpayer had that upon a given day his land would be sold to pay delinquent taxes. However, in 1917, the Legislature of the State of Ohio amended the delinquent land tax sale law, and enacted a foreclosure provision in such amendment, which affords to all parties the ample notice given in fore
 
 *163
 
 closure actions. In harmony with this change, Section 5704, as amended (107 Ohio Laws, 735), provided that after publication of the list of delinquent lands there should be attached to the list a notice that the delinquent lands “will be certified to the auditor of state as delinquent, as provided by law.” That is to say, the notice was changed from a notice that the lands were to be sold to a notice that the lands would be certified as delinquent.
 

 Under the new statute, the old tax sale is abolished and regular foreclosure proceedings, forbidden to be begun until taxes are delinquent four years, are provided in lieu thereof, with marshaling of liens and due process by personal service upon the landowner. Sections 5717 and 5718, General Code. As the statute now stands, no right of the taxpayer is prejudiced by the failure of the officer to publish the list and notice in accordance with Section 5704, because now the taxpayer receives ample notice by summons in foreclosure. These provisions as to notice were formerly necessary for the rights of the parties jeopardized by the sale, but they are no longer necessary for the protection of those rights.
 

 It was held in
 
 Wait
 
 v.
 
 Southern Oil & Tar Co.,
 
 209 Ky., 682, 273 S. W., 473: “Generally statutory provisions directing mode of procedure by public officers are directory, unless a disregard thereof injuriously affects rights of parties, in which event they are mandatory.”
 

 Under the present Code the publishing of the list of delinquent lands is not a condition precedent to assessment of the interest, and has nothing directly to do with its collection. The individual taxpayer learns from publication what he already knew, which is that he has not paid the taxes.
 

 Further convincing proof that the Legislature intended this provision for publication to be directory and not mandatory under the new system of foreclosure exists in the fact that in Section 5710, General
 
 *164
 
 Code, enacted at the same time as Section 5704, and as a part of the same statute (107 Ohio Laws, 735, 736), the Legislature embodied a provision that if the county auditor omits to publish the delinquent list of the county, as required by law, yet he shall charge the lands with the taxes, assessments and penalties. Hence the Legislature expressly made the publication not mandatory as to taxes, assessments and penalties. How can it be mandatory as to interest and not be mandatory as to taxes, assessments and penalties? This states an absurdity, since taxes, assessments and penalties are all part of the same delinquency, which gives rise to the interest.
 

 Since the reason for holding publication to be mandatory no longer exists, and since, in fact, reason weighs heavily on the side of holding publication not to be mandatory, we differ from the conclusion of the Court of Appeals.
 

 We consider it unnecessary to rule upon the exclusion by the court of the evidence offered by the plaintiffs in error tending to show the impossibility of compliance by the auditor with Section 5704.
 

 For the reasons stated, the judgment of the Court of Appeals will be reversed, and judgment entered for the plaintiffs in error.
 

 Judgment reversed and judgment for plaintiffs in error.
 

 Jones, Matthias, Day, Kinkade and Stephenson, JJ., concur.
 

 Marshall, C. J., concurs in propositions 1 and 2 of the syllabus, and in the judgment.