# THE ANACONDA COMPANY (SUCCESSOR BY MERGER TO THE ANACONDA WIRE AND CABLE COMPANY AND THE ANACONDA AMERICAN BRASS COMPANY) *v.* DEPARTMENT OF REVENUE

Milo E. Ormseth and Joel D. Kuntz, Davies, Biggs, Strayer, Stoel and Boley, Portland, represented plaintiff.

Walter J. Apley and James D. Manary, Assistant Attorneys General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered July 26, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiff corporation appeals from the defendant's Order No. I-75-32, issued on August 11, 1975 (hereinafter called the "second order"). Plaintiff asserts that certain assessments against it are void because of defendant's failure to hold the preassessment conference required by ORS 314.405(2) and because the questions decided in the second order had previously been decided by defendant's Order No. I-74-31 (hereinafter called the "first order"), dated September 17, 1974. Plaintiff also asserts that defendant erroneously disallowed a credit for taxes overpaid by plaintiff corporation's subsidiary corporation, Anaconda Wire and Cable Company.

The Anaconda Company, a Montana corporation, has (among others) two divisions, the Anaconda Wire and Cable Company (hereinafter Wire) and the Anaconda American Brass Company (hereinafter Brass). During the years 1965 through 1968, Wire and Brass were wholly owned subsidiaries of the Anaconda Company (hereinafter Anaconda).

For a number of years, Wire had engaged in business activity in Oregon and had filed separate Oregon corporation excise tax returns. In 1969, the Department of Revenue first began an audit of Wire to determine whether its returns should be consolidated with the corporation excise tax returns filed by Anaconda, pursuant to ORS 317.360. The department eventually determined that Wire should have filed on a consolidated basis. It was discovered that if proper consolidated returns had been filed in 1967 and 1968, Wire had underpaid its taxes by $24,672 plus interest. However, in 1965 and 1966, Wire had overpaid its taxes by $5,657. Plaintiff is seeking a credit for these overpayments which the defendant has denied.

During the course of the Wire audit, it was discovered that another Anaconda subsidiary, Brass, was operating in Oregon so that it, too, would be subject to Oregon's excise tax. It had never filed a return and Oregon sought to recover unpaid taxes back to 1955. It was determined that Brass also should have filed on a consolidated basis and the taxes assessed were computed accordingly by defendant.

On December 10, 1970, defendant sent to Wire Notices of Deficiency and proposed assessment for tax years 1965 through 1968. Pursuant to ORS 314.410(6), on January 13, 1971, defendant extended by 60 days the time allowed for filing a protest. On March 5, 1971, Wire protested the Notices of Deficiency and Proposed Assessment and requested a conference. However, the defendant did not hold a conference until after making the proposed assessments final on November 9, 1971. Plaintiff argues that this failure to hold the statutorily required preassessment conference voids the entire assessment.

During this time, the assessment of Brass was also proceeding and on April 18, 1974, a hearing regarding both Wire's and Brass's assessments was held. On September 17, 1974, as a result of this hearing, the defendant issued its Opinion and Order No. I-74-31 (the first order). It is the position of plaintiff that this order dealt with both the protests of Wire and of Brass, while the defendant argues that it dealt solely with Brass. Almost a year later, on August 11, 1975, the defendant issued its second order, No. I-75-32, from which this appeal is taken. Plaintiff argues that the first order decided all the questions and that the second order, therefore, has no effect.

■ *Failure to Hold a Preassessment Conference.* Plaintiff argues that the failure of the defendant to hold a preassessment conference in accordance with ORS 314.405(2), prior to making a final assessment,

voids that assessment. It is therefore urged that the Department of Revenue's tax assessment against Anaconda of $24,672 plus interest for tax years 1967 and 1968 is void. The Department of Revenue admits that the preassessment conference was not held, but argues that the failure to hold such a conference does not void the assessment.

At this point, it is helpful to review the assessment procedures that the Department of Revenue must follow under the applicable statutes. The department is required to make a proposed assessment within three years after the return is filed. ORS 314.410(1). Within 30 days after the proposed assessment, the taxpayer must either pay the assessment or ask for a preassessment conference. ORS 314.405(2). This conference may be held any time prior to final assessment, which must be made within one year after the proposed assessment. ORS 314.410(4).

ORS 314.405(2), requiring that a preassessment conference must be held, reads as follows:

> "Within 30 days from the date of mailing of notice of proposed assessment, the taxpayer shall pay the proposed deficiency with interest computed to the date of payment and any penalty proposed, or within that time shall advise the department in writing wherein its determination of deficiency is erroneous. If requested by the taxpayer in his written objection to the proposed deficiency, the taxpayer *shall* have an opportunity to confer with the department or its delegate as to the proposed assessment at any time prior to the date such assessment is made." (Emphasis supplied.)

It is interesting to note that the statute offers the taxpayer only "an opportunity to confer with the department or its delegate as to the proposed assessment * * *." The defendant and the court have used the term "preassessment conference" in referring to this taxpayer right, but this term may imply too much

formalism since the "conferring" may consist of a series of ongoing contacts between the department and the taxpayer. The plaintiff has often used the term "preassessment hearing," which certainly implies a much more formal presentation by the taxpayer to the department than envisioned by ORS 314.405(2).*

The question of whether the failure of. a taxing authority to follow a statutory directive voids the assessment is answered by determining whether the statute is mandatory or directory. The mandatory-directory distinction is used to determine the result of the failure to comply with a statutory provision:

> "* * * No statutory provisions are intended by the legislature to be disregarded; but where the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine them. * * *" 2A *Sutherland Statutory Construction* § 57.01 (C. Sands, 4th ed 1973).

If directory, then the taxing authority is only directed to follow the statute. If the failure to follow the statute harms no one, in the final analysis (because of further rights of appeal), an assessment violating it will not be voided. However, if mandatory, and the taxpayer is substantially prejudiced by the failure to follow the statute, then any assessment made under it would be void.

In *Miller v. Lakewood Housing Co.,* 125 Ohio St 152, 180 NE 700, 81 ALR 1239 (1932), the complaint asked for the remission of interest on delinquent taxes on real estate owned by the plaintiff. The basis for the remission was that the county auditor failed to advertise the delinquent taxes under section 5704 of the

---

* *Compare* ORS 314.405(2), the conference, and ORS 314.455(2), the hearing on appeal, and the pertinent promulgated rules.

General Code. The court noted the general rule, 125 Ohio St at 161, 180 NE at 703, 81 ALR at 1244-1245:

"Whether a statutory requirement is mandatory or directory depends on its effect. If no substantial rights depend on it and no injury can result from ignoring it, and the purpose of the Legislature can be accomplished in a manner other than that prescribed and substantially the same results obtained, then the statute will generally be regarded as directory; but, if not, it will be mandatory. * * *"

The court concluded that the publication required was not mandatory because the taxpayer would have already received the information through other statutory channels.

In *Bonaparte v. American Vinegar Mfg. Co.,* 161 Okla 54, 65, 17 P2d 441, 452 (1932), the plaintiff sought "to avoid its entire personal property assessment solely upon the ground that the assessor failed to publish the name of the owner and the value of the personal property as required by section 9664, * * *." The court, in rejecting the contention, stated (161 Okla at 65, 17 P2d at 452):

"* * * Requirements intended for the protection of the citizen and to prevent a sacrifice of his property, and by disregard of which his rights might be and generally will be injuriously affected, are not directory but mandatory. * * * While we do not think that section 9664 was intended for the protection of the individual taxpayer, if it were we fail to see where a failure of the assessor to publish the notice giving the name of the owner and the value of his personal property assessment might or generally would injuriously affect the rights of such taxpayer. If he failed or neglected to list his property and it is listed by the assessor uniformly with like subjects of taxation, he is not injuriously affected. Under the provisions of the Code an opportunity is afforded him to appear before the equalization board or before the board of coun-

ty commissioners, and if for any reason he has been deprived of any of his rights and prevented from appearing before any of these boards on account of the failure of the assessor or the equalization board to give notice of an increase in the value of his assessment, he still has his remedy in the courts as fully pointed out heretofore."

This court, in *Equitable Sav. & Loan v. Commission,* 3 OTR 1 (1967), *aff'd,* 251 Or 70, 444 P2d 916 (1968), implicitly held that the failure of the department to follow certain statutory requirements would not void the assessment. In that case, the department had failed to give a reference to the statute, regulation or ruling upon which the proposed assessment was based, pursuant to ORS 314.405(1) (b). This court refused to void the assessment because of the failure on the part of the department, and thus inferentially ruled that the statute was directory in nature. *See also Portland Canning Co. v. Commission,* 1 OTR 600 (1964), *aff'd,* 241 Or 109, 404 P2d 236 (1965); *Linn County v. Rozelle,* 177 Or 245, 266, 162 P2d 150, 159 (1945); *Spokane County ex rel. Sullivan v. Glover,* 2 Wash2d 162, 169, 97 P2d 628, 631 (1940); *Ryan v. Byram,* 4 Cal2d 596, 603, 51 P2d 872, 876 (1935); 2A *Sutherland Statutory Construction, supra,* at § 57.20.

In applying the general rule for determining whether a statute is mandatory or directory, this court must make a determination as to whether there has been an abridgment of some substantial right of a taxpayer by the failure of the department to hold the preassessment conference. Plaintiff argues a number of such abridgments.

It is first asserted that, because of the department's failure to grant a conference, "defendant unlawfully imposed a large, unjustified lien on plaintiff's property for many months. * * *" The defendant

has denied this assertion and no proof has been presented thereon. ORS 314.417 imposes a lien at the time of the assessment, but such lien is inchoate until acted upon. ORS 314.430. In addition, the taxpayer could have avoided a lien by choosing to pay the taxes and appealing for revision of the deficiency. ORS 314.455 (1) (b). If it is ultimately determined that the taxes were not due, a refund, plus interest, is available under ORS 314.455(2).

A second prejudicial act claimed by plaintiff is that defendant, by not granting any sort of a conference until "after assessment [,] was able to avoid the one-year requirement for conference and assessment under ORS 314.410(4) and to delay greatly the resolution of this case." This has also been denied by defendant and no proof has been submitted by plaintiff on this point. In addition, the evidence indicates that defendant did not delay the one-year requirement for an assessment since the tax was assessed on November 9, 1971, less than one year from the date of the proposed assessment, December 10, 1970.

Plaintiff also asserts that its consolidated financial accounts for 1971 reflected the assessments of November 9, 1971, "and served to increase plaintiff's published consolidated 1971 loss by approximately the amount of tax and interest assessed." However, plaintiff has failed to indicate how, if a conference had been arranged, there was a substantial likelihood that the proposed assessments would have been abated. Even if it had been shown that a preassessment conference would have resulted in a lower assessment, plaintiff would still have to prove that the reduction would have been significant in relation to the company's published financial statements so that investors, creditors and other users of such statements would have been unfavorably affected. This the plaintiff has not done.

Finally, plaintiff argues that, if the controversy had been resolved in 1971, plaintiff would have been entitled to a carry-back for a federal tax refund for 1968 of $15,498 plus interest. Since plaintiff's properties in Chile were expropriated, and since a 10-year federal income tax carry-forward was available, it is unlikely that Anaconda will have earnings sufficient to enable it to carry forward the increased losses occurring as a result of the delayed assessment. Plaintiff's argument is very speculative. It again assumes that the failure to hold a conference delayed the formulation of an accurate assessment against it, and that its earnings will not be high enough over the next 10 years to make it possible to recoup Oregon's additional tax requirements by deduction from federal income taxes.

Plaintiff has failed to show how it was substantially prejudiced by the failure of the Department of Revenue to hold the preassessment conference. Although the preassessment conference is unquestionably a valuable provision for quick resolution of many tax problems, it is difficult to see how the failure to hold a preassessment conference can be considered a crucial step in the statutory scheme in this instance. In addition to the conference, a taxpayer has the right to a hearing before the Department of Revenue, a trial de novo before this court, and a specific right of appeal to the Oregon Supreme Court. *See Portland Canning Co., supra,* and *Bonaparte v. American Vinegar Mfg., Co., supra* (17 P2d at 452). ORS 314.405(2), granting a right to a taxpayer conference before the Department of Revenue may issue a final assessment, is a directory statute and a failure by the department to follow it will not void the assessment. (The failure does raise a question as to the diligence of departmental supervisors. The record shows that there was a continuous dialogue between the defendant and a

very wary, even uncooperative, plaintiff, but the word "shall" in ORS 314.405(2) is an imperative.)

*Question Decided by Prior Order.* In addition to arguing that the assessment is void because of the failure to hold a preassessment conference, plaintiff also argues that the second order is erroneous because "[i]t purports to require payment of additional tax in an appeal which has been decided and disallowed almost a year earlier under ORS 314.455 by Opinion and Order No. I-74-31." Plaintiff argues that since the hearings for Wire and Brass were held on the same day, and because the first order regarding Brass discusses questions relevant to Wire, the first opinion and order should control. It was stipulated that Anaconda's representative at the hearing believed that the first order resolved all the issues included in plaintiff's appeal heard on April 18, 1974. Apparently, plaintiff's position is that the second order issued by the department is void.

It is true that the first order is confusing in that it does not clearly apply to either Brass or Wire. However, to an individual who has heard the testimony and who is familiar with the continuing controversy between Anaconda and the department, it should be fairly clear that the first order concerns only Brass and did not resolve the questions relating to Wire.

First of all, the heading of the first opinion and order refers to "the Appeal of Anaconda Company (by Merger of Anaconda American Brass Company) * * *." The same use of parentheses, in referring to either Brass or Wire, has occurred in previous correspondence between Anaconda and the department and should have put Anaconda on notice that this first order dealt only with Brass.

Secondly, the amount of the assessment against

Wire was obviously not treated in the first order. On May 31, 1973, the Department of Revenue summarized the tax due on "The Anaconda Company (by merger of the Anaconda Wire & Cable Company) * * *." For 1967, the deficiency set forth was $10,185.53 and, for 1968, it was $14,486.60. However, the 1967 and 1968 deficiencies set forth at the end of the first order are $3,837.42 and $2,791.56, respectively.

The format of the first order is understandable since the controversy between Anaconda and the department first started over an audit of Wire, which eventually led to the department's discovery of Brass. In fact, this point is recited at the beginning of the first order. Long portions of that order discuss Wire. For example, the order states that the second issue is whether "the over-assessments for the years 1965 and 1966 of the Anaconda Wire & Cable Company [can] be utilized as credits for the same years against the deficiencies resulting from the operations in Oregon of the other subsidiaries [sic], Anaconda American Brass Company." However, since a credit for overpaid assessments against Wire would lower Brass's assessments, it is logical that the first order regarding Brass would include such a discussion. Under the circumstances, a belief that the first order resolved all the issues with regard to Wire is not reasonable.

*Refund of Overpaid Taxes.* Finally, plaintiff asserts that the Department of Revenue's second order was in error because Wire was not given credit for $5,657 in taxes it overpaid in 1965 and 1966 because it filed individually instead of on a consolidated basis with Anaconda and Brass. Note is taken that if the court had previously held that the second order was invalid because it decided questions already decided by the first order, plaintiff would be precluded from making this argument. Plaintiff would then have been

required to make an appeal regarding the question of overpaid taxes from the first order, and the time for making an appeal from that order has long since elapsed.

■ The court agrees with the plaintiff regarding this point. ORS 317.360(1) directs that: "* * * The corporations which are joined in a consolidated return shall be treated as one taxpayer." If time limitations permit the defendant to impose additional assessments against one element of the unitary organization, credits against tax arising in the same period of time (1965 through 1968) in respect to another element of the unit must be deemed to be within the time limitation. If the taxpayer is treated as one corporation, then any overpayment on the part of Wire should be offset by underpayments on the part of Brass. It is, indeed, inconsistent for the Department of Revenue to find, on the one hand, that Wire and Brass should have filed on a consolidated basis, and then, on the other hand, not to allow overpayments on the part of Wire to offset nonpayments on the part of Brass.

The Department of Revenue's position misses the point. It argues that the taxpayer must apply for a refund under ORS 314.415(1) (b) within three years from the time the return was filed and, since the time has elapsed, no refund can be allowed. When the taxes were computed on a consolidated basis, the overpayment of one subdivision must be offset with the underpayments of the other subdivisions. By treating all the subdivisions as one taxpayer, it is clear that there is no refund, but simply a net reduction of all the taxes due from the consolidated group.

*Conflict between Stipulation and Testimony.* A final point urged by plaintiff must be considered. At the close of trial, plaintiff requested a continuance because certain testimony presented by defendant's

witness was in conflict with the stipulation counsel had previously entered into. Counsel had stipulated that there were no communications between the parties after the request for a conference and before the issuance of the assessment. In the answer to the complaint, the defendant admits plaintiff's allegation that "[d]efendant did not grant the requested conference regarding the proposed assessment before making the assessment on November 9, 1971." In light of the stipulation and admissions in the pleadings, the court will ignore any testimony tending to show contacts between the parties that may have amounted to a preassessment conference. The failure to hold the preassessment conference will not void the assessment and the resolution of whether contacts amounting to a preassessment conference were made is therefore not necessary. The request for a continuance is therefore denied.

In summary, defendant's Order No. I-75-32, issued on August 11, 1975, is upheld in its assessment of taxes against plaintiff corporation for 1967 and 1968. However, defendant erred in refusing to allow the 1965 and 1966 overpayments of Wire to be offset against the underpayments on the part of Brass. Accordingly, pursuant to Rule 26 of the rules of the Tax Court, entry of a decree will be withheld to permit the parties to submit computations showing the result of the offset on the final assessment against Anaconda. (It would appear that the entire overpayment should be allowed since, for those same years, the amounts due from Brass were larger than the overpayments by Wire.)

No costs to either party. Attorney fees for plaintiff are denied.