[Cite as *Clovernook Health Care Pavilion v. Dept. of Medicaid*, 2021-Ohio-337.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Clovernook Health Care Pavilion et al.,     :

      Appellants-Appellants,     :

                                            No. 20AP-87

v.                                   :        (C.P.C. No. 19CV-3402)

Ohio Department of Medicaid,            :        (REGULAR CALENDAR)

      Appellee-Appellee.       :

---

D E C I S I O N

Rendered on February 5, 2021

---

**On brief:** *Rolf Goffman Martin Lang LLP*, *Joseph F. Petros, III*, and *W. Cory Phillips*, for appellants. **Argued:** *Joseph F. Petros, III.*

**On brief:** *Dave Yost*, Attorney General, and *Cheryl R. Hawkinson*, for appellee. **Argued:** *Cheryl R. Hawkinson.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Appellants Clovernook Health Care Pavilion and OVM Investment Group, LLC dba Ohio Valley Manor Nursing and Rehabilitation (collectively "Clovernook") appeal the judgment of the Franklin County Court of Common Pleas affirming an adjudication order issued by appellee, the Ohio Department of Medicaid ("ODM"), that seeks to recover certain alleged overpayments. For the following reasons, we reverse the trial court.

**I. Facts and Procedural History**

{¶ 2} Clovernook is a nursing and long-term care facility that participated in, and allegedly received overpayments from, the Ohio Medicaid program. ODM, as administrator of the Medicaid program, notified Clovernook in a letter dated March 12, 2019 of its intent to adjudicate certain asserted overpayments. The "Notice of Intent to Adjudicate" cites to

R.C. Chapter 119 and R.C. 5165.525 and includes a "Final Debt Summary Report" that reflects, in relevant part, that Clovernook was overpaid $12,392.15 for the 2006 fiscal year and $2,006.00 for the 2013 fiscal year.  (Certified Record at 1.)  The notice also includes information about how to timely request a hearing "regarding a finding in the Final Debt Summary Report" within 30 days of the mailing date of the notice and warns that failure to request a hearing would lead to ODM adopting and ratifying the findings of the final debt summary report.  (Certified Record at 1.)

{¶ 3}  Clovernook did not request a hearing and on April 12, 2019 the director of ODM issued an adjudication order pursuant to R.C. Chapters 5165 and 119 that adopted and ratified the findings in the final debt summary report and sought repayment of the debt owed.  Clovernook filed a timely notice of appeal of the adjudication order to the Franklin County Court of Common Pleas.  In support of its appeal, Clovernook argued that, before ODM can commence an action to recover the alleged overpayment, R.C. 5164.57(A)(1)[1] requires ODM to notify a provider of an alleged overpayment within five years immediately following the end of the fiscal year in which the overpayment allegedly occurred.  According to Clovernook, if this notice requirement is not satisfied, ODM is without authority or jurisdiction to recover the debt.  Clovernook asserted that the notice in this case did not comply with R.C. 5164.57(A)(1) and therefore ODM did not have subject-matter jurisdiction to enter the April 12, 2019 Adjudication Order and the order is void.

{¶ 4}  ODM responded that Clovernook failed to exhaust its administrative remedies and waived this issue since, despite receiving proper notice, Clovernook failed to request an administrative hearing where it could have raised this argument. ODM further argued that Clovernook referred to facts outside of the record and that ODM had subject-matter jurisdiction to issue the notice letter because R.C. 5164.57 reflects a directory, rather than a mandatory and jurisdictional, timeframe.

{¶ 5}  The court of common pleas issued a decision and judgment on January 9, 2020 affirming the April 12, 2019 adjudication order.  The court of common pleas first found that, after consideration of the record, ODM was authorized by R.C. 5164.39 to issue the adjudication order since ODM "properly served Clovernook with the [n]otice and [d]ebt [s]ummary by certified mail, as required by R.C. 119.07," the notice set forth the proper

---

[1] Formerly R.C. 5111.061(A).

information, and Clovernook did not request a hearing within 30 days of ODM mailing the notice. (Decision at 5.) Then, considering the parties' "[a]rguments on [a]ppeal," the court of common pleas found that R.C. 5164.57(A)(1) is expressly "directory" not "mandatory." (Decision at 5.) The court reasoned that "[a]s an initial matter, R.C. 5164.57 does not use the word 'shall' " and noted that in *AmCare, Inc. v. Ohio Dept. of Job & Family Servs.*, 161 Ohio App.3d 350, 2005-Ohio-2714 (10th Dist.), this court found that even the legislature's use of the word "shall" in another statute did not lead to the conclusion that the statute was mandatory. (Decision at 7.) The court of common pleas also concluded that reading the instant statute as including a mandatory condition precedent to ODM's right to recover overpayments "is at odds with R.C. 5164.57(C)." (Decision at 7.) Based on the foregoing analysis, the court of common pleas concluded that the adjudication order at issue in this case was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 6} Clovernook filed a timely appeal.

## II. Assignment of Error

{¶ 7} Clovernook asks this court to review the following sole assignment of error:

> THE LOWER COURT ERRED IN FINDING THAT R.C. 5164.57(A)(1)'s FIVE-YEAR NOTICE REQUIREMENT IS MERELY DIRECTORY AND NOT MANDATORY AND JURISDICTIONAL.

## III. Standard of Review

{¶ 8} "Review of an adjudication order issued by ODM is governed by R.C. 119.12." *Physician's Ambulance Serv., Inc. v. Ohio Dept. of Medicaid*, 10th Dist. No. 20AP-32, 2020-Ohio-6842, ¶ 19, citing *Meadowwood Nursing Facility v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-732, 2005-Ohio-1263, ¶ 8. "Pursuant to R.C. 119.12, a court of common pleas must determine whether an agency's decision is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.*, citing R.C. 119.12(M) and *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993) (explaining that "[a]n agency adjudication is like a trial, and while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own. To the extent that an agency's decision is based on construction of the state or federal Constitution, a statute, or case law,

the common pleas court must undertake its R.C. 119.12 reviewing task completely independently").

{¶ 9} "The standard of review for a court of appeals in an administrative appeal is even more limited." *Melnyk v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-693, 2019-Ohio-5134, ¶ 16. The trial court's determination as to whether an agency's decision is supported by reliable, probative, and substantial evidence is reviewed on appeal for an abuse of discretion. *Bryant Health Care Ctr., Inc. v. Ohio Dept. of Job & Family Servs.* [*Ohio Dept. of Medicaid*], 10th Dist. No. 13AP-263, 2014-Ohio-92, ¶ 23, citing *Fletcher v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-46, 2012-Ohio-3920, ¶ 8, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992). "On questions of law, however, the common pleas court does not exercise discretion and the court of appeals review is plenary." *Black v. State Bd. of Psychology*, 160 Ohio App.3d 91, 2005-Ohio-1449, ¶ 5 (10th Dist.), citing *Univ. Hosp., Univ. of Cincinnati College of Medicine* at paragraph one of the syllabus. "[W]hether a trial court correctly interpreted and applied a statute is a question of law" reviewed de novo on appeal. *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 8. *2200 Carnegie, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 135 Ohio St.3d 284, 2012-Ohio-5691, ¶ 10 ("In the area of administrative procedure, jurisdictional issues that call for construction of the statutes present questions of law that we review de novo on appeal.").

## IV. Analysis

{¶ 10} Resolution of this appeal centers on the narrow question Clovernook assigned for our review: whether the notice requirement in R.C. 5164.57(A)(1) is "directory" as opposed to "mandatory" and jurisdictional. (Clovernook's Brief at 1.) We conclude that because R.C. 5164.57(A)(1) conditions ODM's authority to recover Medicaid overpayments on ODM's provision of notice to the provider within the requisite five-year period, compliance with the R.C. 5164.57(A)(1) notice provision is mandatory.

{¶ 11} The difference between a mandatory and a directory statutory requirement "depends on its effect." *Miller v. Lakewood Hous. Co.*, 125 Ohio St. 152, 161 (1932). " 'A statute is mandatory where noncompliance with its provisions will render illegal and void the steps or acts to which it relates or for which it provides, and is directory where noncompliance will not invalidate such steps or acts.' " *AmCare, Inc.* at ¶ 18, quoting *State ex rel. Jones v. Farrar*, 146 Ohio St. 467 (1946), paragraph one of the syllabus. The

determination of whether the legislature intended a statutory provision to be mandatory or directory requires review of the specific language employed viewed in context of "the entire act, its nature, its effect and the consequences which would result from construing it one way or another." *Jones* at 472; *Internatl. Paper Co. v. Testa, Tax Commr.*, 150 Ohio St.3d 348, 2016-Ohio-7454, ¶ 19.

{¶ **12**} As a general rule, " 'a statute which provides a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure.' " *State ex rel. Martin v. Mannen*, 113 Ohio St.3d 373, 2007-Ohio-2078, ¶ 6, quoting *Jones* at 472; *In re Davis*, 84 Ohio St.3d 520, 522 (1999). However, the Supreme Court of Ohio has recognized an exception to this general rule where " 'the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer.' " *AmCare, Inc.* at ¶ 19, 21-22, quoting *State ex rel. Smith v. Barnell*, 109 Ohio St. 246, 255 (1924). Statutory time for performance provisions that "manifestly strike 'to the core of procedural efficiency' and are 'essential to the proceeding' " also provide an exception to the general rule and are mandatory. *State ex rel. Ragozine v. Shaker*, 96 Ohio St.3d 201, 2002-Ohio-3992, ¶ 14, quoting *Nibert v. Ohio Dept. of Rehab. & Corr.*, 84 Ohio St.3d 100, 103 (1998), and *In re Removal of Osuna,* 116 Ohio App.3d 339, 341 (12th Dist.1996).

{¶ **13**} The parties in this case debate whether the notice requirement in R.C. 5164.57(A)(1) is a mandatory provision, in other words a gatekeeping function to ODM's authority to recover Medicaid overpayments under R.C. 5164.57, or a directory provision essentially allowing ODM to issue an adjudication order to recover Medicaid overpayments despite failing to comply with the notice requirement within the statutorily specified timeframe. R.C. 5164.57, entitled "Recovery of medicaid overpayments," states in its entirety:

> *(A)*
>
> *(1) Except as provided in division (A)(2) of this section, the department of medicaid may recover a medicaid payment or portion of a payment made to a medicaid provider to which the provider is not entitled if the department notifies the provider of the overpayment during the five-year period*

*immediately following the end of the state fiscal year in which the overpayment was made.*

(2) In the case of a hospital medicaid provider, if the department determines as a result of a medicare or medicaid cost report settlement that the provider received an amount under the medicaid program to which the provider is not entitled, the department may recover the overpayment if the department notifies the provider of the overpayment during the later of the following:

(a) The five-year period immediately following the end of the state fiscal year in which the overpayment was made;

(b) The one-year period immediately following the date the department receives from the United States centers for medicare and medicaid services a completed, audited, medicare cost report for the provider that applies to the state fiscal year in which the overpayment was made.

(B) Among the overpayments that may be recovered under this section are the following:

(1) Payment for a medicaid service, or a day of service, not rendered;

(2) Payment for a day of service at a full per diem rate that should have been paid at a percentage of the full per diem rate;

(3) Payment for a medicaid service, or day of service, that was paid by, or partially paid by, a third party, as defined in section 5160.35 of the Revised Code, and the third party's payment or partial payment was not offset against the amount paid by the medicaid program to reduce or eliminate the amount that was paid by the medicaid program;

(4) Payment when a medicaid recipient's responsibility for payment was understated and resulted in an overpayment to the provider.

(C) The department may recover an overpayment under this section prior to or after any of the following:

(1) Adjudication of a final fiscal audit that section 5164.38 of the Revised Code requires to be conducted in accordance with Chapter 119. of the Revised Code;

(2) Adjudication of a finding under any other provision of state statutes governing the medicaid program or the rules adopted under those statutes;

(3) Expiration of the time to issue a final fiscal audit that section 5164.38 of the Revised Code requires to be conducted in accordance with Chapter 119. of the Revised Code;

(4) Expiration of the time to issue a finding under any other provision of state statutes governing the medicaid program or the rules adopted under those statutes.

(D)

(1) Subject to division (D)(2) of this section, the recovery of an overpayment under this section does not preclude the department from subsequently doing the following:

(a) Issuing a final fiscal audit in accordance with Chapter 119. of the Revised Code, as required under section 5164.38 of the Revised Code;

(b) Issuing a finding under any other provision of state statutes governing the medicaid program or the rules adopted under those statutes.

(2) A final fiscal audit or finding issued subsequent to the recovery of an overpayment under this section shall be reduced by the amount of the prior recovery, as appropriate.

(E) Nothing in this section limits the department's authority to recover overpayments pursuant to any other provision of the Revised Code.

(Emphasis added.)

{¶ 14} Clovernook asserts that the notice requirement in R.C. 5164.57(A)(1) is mandatory because it expressly conditions ODM's authority to recover a Medicaid overpayment on ODM giving notice to the provider within five years of the end of the state fiscal year in which the overpayment was made. Clovernook emphasizes that ODM's failure to comply with this notice requirement presents an obstacle to its ability to defend itself: the alleged overpayments from the 2006 and 2013 fiscal years occurred over the five-year timeframe in R.C. 5164.57(A)(1) and they "did not (and could not have been expected to)

remain in possession of documents or records necessary to contest the findings in the Final Debt Summary Report" in 2019.  (Clovernook's Brief at 12.)

{¶ 15} ODM counters that the court of common pleas was correct in finding that R.C. 5164.57(A)(1) was directory and not mandatory since, in line with the reasoning and legal principles outlined in *AmCare, Inc.*, the statute here does not use the word "shall" and also because reading the notice requirement as mandatory is "at odds with R.C. 5164.57(C)."  (ODM's Brief at 8.)  Overall, ODM contends that R.C. 5164.57(A)(1) merely states a "time for the performance of an official duty" and not a limit on ODM's authority to act.  (ODM's Brief at 1.)[2]

{¶ 16} We agree with Clovernook's assessment of R.C. 5164.57(A)(1). First, the *AmCare, Inc.* case supports Clovernook's—rather than the court of common pleas and ODM's—position.  *AmCare, Inc.* considered the issue of "whether R.C. 5111.27(B)[3] placed a mandatory duty upon [the Ohio Department of Job and Family Services] to issue audit reports within three years after the first six-month cost reports were filed, thereby voiding any determination associated with audit reports not issued within three years of the first six-month cost reports."  *Id.* at ¶ 12.  The statute at issue, R.C. 5111.27(B), stated: "*The department shall issue the audit report no later than three years after the cost report is filed*, or upon the completion of a desk or field audit on the report or a report for a subsequent cost reporting period, whichever is earlier." (Emphasis sic.)  *Id.* at ¶ 13.  This court determined that "notwithstanding the use of the word 'shall' regarding the issuance of an audit report, R.C. 5111.27(B) does not express an intent that appellee is precluded from recovering overpayments if an audit report is not issued within three years of a cost report."  *Id.* at ¶ 21. We therefore declined to apply the exception for " '*designation of time [that] must be considered a limitation upon the power of the officer*' " and instead applied the general rule that statutory provisions expressing " 'time for the performance of * * * official duti[es]' " are directory. (Emphasis sic.)  *Id.* at ¶ 19, quoting *Smith* at 255; *id.* at ¶ 18, quoting *Jones* at paragraph three of the syllabus.  As a result, we concluded "it is clear that the three-year time provision in R.C. 5111.27(B), relating to the issuance of audit reports, is

---

[2] We note ODM does not argue, pursuant to R.C. 5167.57(E), that the notice requirement in R.C. 5164.57(A)(1) does not limit its authority to recover overpayments pursuant to another provision of the Revised Code.

[3] This section was renumbered as R.C. 5165.108 by 2013 H.B. No. 59, effective September 29, 2013.

a directory provision, and not a statutory limitation on appellee's ability to recover overpayments." *Id.* at ¶ 21.

{¶ 17} While *AmCare, Inc.* discussed the general rule that "the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage," the case did not involve the issue of, or otherwise determine, that the lack of the word "shall" conclusively shows a legislative intent to state a directory provision. (Internal quotations and citations omitted.) *Id.* at ¶ 16. To the contrary, a review of relevant case law shows the legislature may express its intent for a statutory provision to be mandatory without using the word shall. *See, e.g.*, *State ex rel. Webb v. Bd. of Edn.*, 10 Ohio St.3d 27, 29-30 (1984) (discussing that the provision in R.C. 3319.11 that states: "If the board of education does not give such teacher written notice of its action on the superintendent's recommendation of a limited contract for not to exceed two years before the thirtieth day of April, such teacher is deemed reemployed under a continuing contract at the same salary plus any increment provided by the salary schedule" means "that the failure by a school board to timely serve the teacher with notice of non-renewal deprives the board of its authority to bar renewal"); *Internatl. Paper* at ¶ 11 (finding the time deadline stated in R.C. 5751.53(D)—"Unless extended by mutual consent, the tax commissioner may, until June 30, 2010, audit the accuracy of the amortizable amount available to each taxpayer that will claim the credit, and adjust the amortizable amount or, if appropriate, issue any assessment or final determination, as applicable, necessary to correct any errors found upon audit"—to be mandatory). *See also AmCare, Inc.* at ¶ 18-19 (stating general rules and exceptions in determining whether a statute is mandatory or directory), quoting *Jones* at paragraphs one, two, and three of the syllabus, and *Smith* at 255.

{¶ 18} Moreover, the statutory requirement in *AmCare, Inc.* was untethered to language limiting ODM's ability to recover overpayments. In this case, the operative language in R.C. 5164.57(A)(1) states that ODM may recover a Medicaid payment to which the provider is not entitled "if" the department notifies the provider of the overpayment during the five-year period immediately following the end of the state fiscal year in which the overpayment was made. The provision specifically addresses ODM's ability to recover Medicaid overpayments and in the same sentence limits that ability based on ODM's timely provision of notice to the provider. Unlike in *AmCare, Inc.*, the plain language of R.C.

5164.57(A)(1) demonstrates legislative intent to make the five-year period notice requirement in R.C. 5164.57(A)(1) a condition precedent to ODM's statutory authority to act rather than a mechanism to " 'fix[] the time simply for convenience or orderly procedure.' " *AmCare, Inc.* at ¶ 18, quoting *Jones* at paragraph three of the syllabus. *See State ex rel. Figueroa v. Ohio Dept. of Commerce*, 10th Dist. No. 18AP-698, 2019-Ohio-5200 (determining the use of the word "if" in a statutory time provision expressed a condition precedent); *Moody v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 02AP-596, 2002-Ohio-6965, ¶ 2, 10 (finding intent to create condition precedent in an agreement that used an "if" clause as a precursor to the commission's duty to reimburse a party); *Webb.*

{¶ 19} While both the court of common pleas and ODM asserted, without further explanation, that reading R.C. 5164.57(A)(1) as mandatory is "at odds" with R.C. 5164.57(C), we do not sense the same friction between the provisions. R.C. 5164.57(C) states only that ODM may recover an overpayment "*under this section* prior to or after" adjudication of, or expiration of the time to issue, a final fiscal audit that R.C. 5164.38 requires to be conducted in accordance with R.C. Chapter 119; or, adjudication of, or expiration of the time to issue, a finding "under any other provision of state statutes governing the medicaid program or the rules adopted under those statutes." (Emphasis added.) R.C. 5164.57(C) does not address notice to the provider and is not listed as an exception in R.C. 5164.57(A)(1). R.C. 5164.57(A)(1) does expressly state an exception to the "five-year period" notice requirement—R.C. 5164.57(A)(2)—a provision which provides a different timeline for ODM to provide notice when the provider is a hospital. We decline to add words to R.C. 5164.57(A)(1) to create another exception to R.C. 5164.57(A)(1)'s notice requirement.

{¶ 20} Moreover, construing R.C. 5164.57(A)(1) as mandatory "inflicts the adverse consequence on the state itself and on no other party" and protects a provider's ability to defend itself. *Internatl. Paper* at ¶ 19-21 (finding, as a persuasive consideration in favor of a mandatory statutory time provision, that the outcome of finding the statute to be mandatory would only penalize the state for failing to comply with a stated timeline rather than deprive both parties of the benefit of the statute).

{¶ 21} Considering all the above, we find R.C. 5164.57(A)(1) conditions ODM's authority to recover, under R.C. 5164.57, a Medicaid payment to which the provider is not entitled on ODM's provision of notice within the five-year period immediately following the

end of the state fiscal year in which the alleged overpayment was made. Because R.C. 5164.57(A)(1) places a "limitation upon [ODM's] power," it is a mandatory provision and the court of common pleas erred in finding the notice requirement in R.C. 5164.57(A)(1) to be "expressly directory." *Smith* at 255. (Decision at 8.)

{¶ 22} We acknowledge that ODM argued, in the alternative, that Clovernook "waived" its right to appeal this issue "by not requesting an administrative hearing." (ODM's Brief at vii.) ODM raised this issue to the court of common pleas. While the court of common pleas cited case law with the general rules related to waiver in its decision, it did not analyze this issue or hold Clovernook waived any issues, and instead proceeded to address the substance of Clovernook's R.C. 5164.57(A)(1) argument. (Decision at 4, quoting *Crosby-Edwards v. Ohio Bd. of Embalmers & Funeral Dirs.*, 175 Ohio App.3d 213, 2008-Ohio-762, ¶ 38 (10th Dist.), and *Jain v. Ohio State Med. Bd.*, 10th Dist. No. 09AP-1180, 2010-Ohio-2855, ¶ 10.) Because our conclusion that R.C. 5164.57(A)(1) conditions ODM's authority to recover Medicaid overpayments on ODM's provision of notice to the provider within the requisite five-year period may inform the issue of waiver, and the court of common pleas has not yet addressed this issue, we remand the matter for the court of common pleas to address it, and other issues it deems appropriate, in the first instance now that the governing statute is appropriately elucidated.

{¶ 23} Accordingly, Clovernook's assignment of error is sustained.

## V. Conclusion

{¶ 24} Having sustained Clovernook's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this case to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed and cause remanded.*

NELSON, J, concurs.
SADLER, J., dissents.

NELSON, J., concurring.

{¶ 25} I join in the majority opinion in full. The language adopted by the General Assembly in R.C. 5164.57 establishing and cabining the department's authority to recover Medicaid payments as made to a provider seems quite straightforward. To the extent relevant here, it recites requirements of law, not mere suggestions. And on administrative appeal in such cases, a common pleas court is charged with determining whether the record

(as proffered by the department alone and uncontested where the provider elects not to participate at the administrative level) reflects sufficient evidence showing that the agency acted in accordance with law.  *See* R.C. 119.12(M).  Whether the department here on an appropriately considered record had authority to act as it did is in the first instance a determination for the common pleas court to make in light of a correct understanding of the controlling statute.

SADLER, J., dissenting.

{¶ 26} Because Clovernook failed to request a hearing before ODM, Clovernook forfeited its right to raise the failure of R.C. 5164.57(A)(1) notice in the court of common pleas.  Accordingly, I would affirm the adjudicatory order without reaching the issue of statutory interpretation.  Because the majority does not, I respectfully dissent.

{¶ 27} "While the failure to request an administrative hearing does not deprive a party of the right to appeal, it is not without consequence."  *Edmands v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-778, 2015-Ohio-2658, ¶ 18.  An administrative hearing typically "provides a forum for a party to raise legal and factual arguments propounding why an agency should not take the proposed action against the party."  *Id.*  By not requesting a hearing, the party forfeits its opportunity to raise arguments that it could have made to the agency; such forfeiture then " 'usually constitutes waiver of that argument' on appeal."  *Id.* at ¶ 18, quoting *In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, ¶ 19.  In addition to invoking general concepts of forfeiture and waiver, the failure to request an administrative hearing may implicate the doctrine of exhaustion, which "requires a person to exhaust administrative remedies before seeking redress from the judicial system."  *Jain v. Ohio State Med. Bd.*, 10th Dist. No. 09AP-1180, 2010-Ohio-2855, ¶ 10.  "The purpose of the doctrine is to allow an administrative agency to apply its expertise in developing a factual record without premature judicial intervention in administrative processes."  *Id.*

{¶ 28} In this R.C. 119.12 appeal, Clovernook argued for the first time in the court of common pleas that R.C. 5164.57(A)(1) precluded ODM from commencing an action to recover certain Medicaid overpayments because ODM did not notify Clovernook of these overpayments within five years immediately following the end of the fiscal year in which the overpayment allegedly occurred.  When Clovernook raised the issue of statutory

construction for the first time in the court of common pleas, one of the arguments made by ODM was that a resolution of that issue depended on consideration of facts outside of the administrative record. My review reveals that the certified administrative record is silent as to whether ODM issued any notice of overpayments to Clovernook other than the March 12, 2019 Notice of Intent to Adjudicate.

{¶ 29} Had Clovernook raised the absence of statutory notice as a defense to the alleged overpayments in a hearing before ODM, ODM would have had the opportunity to submit evidence to support a finding that statutory notice had been given, if such evidence existed, while also preserving the argument that the giving of notice is discretionary. Furthermore, had ODM had the opportunity to submit evidence to support a finding that statutory notice had been given, legal and factual issues regarding the sufficiency of any notice given could have been resolved at the administrative hearing and a record of those proceedings made.

{¶ 30} In the context of an R.C. 119.12 appeal, this court has consistently stated that "[a]llowing a claimant to raise an issue for the first time in an appeal to the court of common pleas would frustrate the statutory system for having issues raised and decided through the administrative process." *Edmands* at ¶ 18; *Jain* at ¶ 10. In this instance, rather than facing the consequences of its failure to exhaust an available administrative remedy, Clovernook is now being rewarded with a favorable ruling on an issue of statutory construction under circumstances where it failed to seek an administrative review to develop the factual record necessary for the common pleas court to determine the merits of its R.C. 119.12 appeal. I find this result particularly troubling given the fact that the issue of statutory construction raised by Clovernook is one of first impression.[4]

{¶ 31} Furthermore, in taking up the issue of statutory construction raised by Clovernook for the first time in this R.C. 119.12 appeal, the majority assumes that ODM did not provide Clovernook with notice of any of the overpayments within five years

---

[4] Effective March 30, 2006, the General Assembly substituted "if the department notifies the provider of the overpayment" in R.C. 5164.57(A) for "[t]he recovery may occur at any time." My research reveals that the issue of statutory interpretation raised in this case was previously raised by a group of providers in a declaratory judgment action. *See OMB MSTR LSCO, LLC v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-223, 2018-Ohio-4843. The trial court dismissed the action due to the providers' failure to seek administrative review or file an R.C. 119.12 appeal. Without reaching the issue of statutory interpretation, this court affirmed the trial court on concluding the providers failed to exhaust administrative remedies and failed to meet their burden to demonstrate that prosecuting an administrative action would be more expensive than the instant action. *Id.* at ¶ 10, 19.

immediately following the end of the fiscal year in which the overpayment allegedly occurred. ODM, however, has never admitted that notice was not provided to Clovernook for the overpayments at issue. Rather, as the majority has acknowledged, ODM has argued, among other things, that the evidence necessary to make that factual determination is not in the administrative record. Had Clovernook challenged ODM's right to collect the overpayments at an administrative hearing, it is possible that ODM would have admitted it did not provide timely notice to Clovernook of its intention to collect some or all of the overpayments. Had that been the case, the administrative record would support a judgment in Clovernook's favor given interpretation of R.C. 5164.57(A)(1) adopted by the majority. Absent an admission by ODM or a finding by an administrative hearing officer that statutory notice was lacking, the adjudication order must be affirmed whether the giving of notice under the statute is discretionary or mandatory.

{¶ 32} Moreover, R.C. 119.12(K) provides that "the court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." Because evidence to support a finding that ODM provided notice to Clovernook would likely have been ascertainable by ODM had Clovernook requested a hearing, Clovernook's election to forego an administrative hearing effectively precluded ODM from supplementing the administrative record with any such evidence in this R.C. 119.12 appeal. In other words, Clovernook's decision to sidestep an administrative hearing left ODM in the dark as to the basis of Clovernook's opposition to the proposed adjudication order until it was too late for ODM to make a record. In my view, a remand to the court of common pleas will serve no purpose.

{¶ 33} For the foregoing reasons, I would hold that Clovernook forfeited the issue of statutory construction raised for the first time in Clovernook's R.C. 119.12 appeal to the court of common pleas when it failed to request administrative review of ODM's proposed adjudication order. Accordingly, I would overrule Clovernook's sole assignment of error and affirm the judgment of the court of common pleas, albeit for different reasons than those expressed therein. Because the majority does otherwise, I respectfully dissent.

_____